UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| TAYLOR CLARK, ) | |
| ) | |
| Plaintiff, ) | Case No.: |
| ) | |
| vs. ) | |
| ) | COMPLAINT |
| AGY HOLDINGS CORPORATION,) | (Jury Trial Requested) |
| ALEXANDRA PEAKE, AND ) | |
| ARCHIE MEYERS (IN THEIR ) | |
| INDIVIDUAL CAPACITIES) ) | |
| ) | |
| Defendants. ) | |
| ) | |

## INTRODUCTION

1. Plaintiff Taylor Clark (hereinafter referred to as "Plaintiff") brings this action against Defendant AGY Holdings Corporation, Defendant Archie Meyers, and Defendant Alexandra Peake, in their individual capacities, (hereinafter referred to as "Defendant" or "Defendants") based on Defendants' actions in discriminating and retaliating against Plaintiff on the basis of her race in violation of 42 U.S.C. Section 1981, Breach of Contract, Breach of Contract accompanied by a Fraudulent Act, Workers' Compensation Retaliation, Intentional Infliction of Emotional Distress, and Civil Conspiracy.

## JURISDICTION AND VENUE

2. The Court has jurisdiction over this action pursuant to 28 U.S.C. Sections 1331 and 1343 and 42 U.S.C. Section 2000e (5), this brings a proceeding to enforce rights and remedies secured under 42 U.S.C. Section 1981 and other Federal relief. This Court also has pendant and supplementary jurisdiction over so much of this action as is based on state law.

3. Venue is proper in the Aiken Division, because the causes of action arose therein, the acts and practices complained of occurred there, and it is where the Defendant does business and may be found.

1

## PARTIES

4. Plaintiff is an African American female citizen of the United States of America and resides in Grovetown, Columbia County, Georgia. Plaintiff began her employment with Defendant in Aiken County and at all times worked for Defendant in Aiken County.

5. Defendant AGY Holdings is a Delaware corporation located in Aiken County, South Carolina.

6. Defendant Archie Meyers, upon information and belief, resides in Marion County, South Carolina and is employed by Defendant AGY Holdings in Aiken County, South Carolina.

7. Defendant Alexandra Peake, upon information and belief, resides in Lexington County, South Carolina and is employed by Defendant AGY Holdings in Aiken County, South Carolina.

## FACTS

8. Plaintiff began her employment with Defendant on or about September 6, 2023, in the capacity of Human Resources Manager.

9. At all times during the course of her employment, Plaintiff performed her job duties well and was an exemplary employee.

10. At the time of Plaintiff's hiring, she was one of three staff in Defendant's Human Resources Department, which included the previous Human Resources Director, Cheryl Crook, who was her supervisor, and the Payroll Representative, Brooke Sheehan.

11. Beginning on or around September 22, 2023, Plaintiff began experiencing profane, abusive, and racially offensive statements and physical acts of aggression from several of Defendant's agents to include Maintenance Manager Chad Hollis (WM), Shop Steward Anna Jolly (WF), Human Resources Director at the time, Jama Fields (WF), and Defendant Chief Financial Officer Archie Meyers (WM).

12. After Ms. Fields' resignation from employment on or around April 15, 2024, following an investigation into allegations of an inappropriate sexual relationship with Executive Staff which Plaintiff reported.

13. Defendant Archie Meyers became Interim Director and Plaintiff's supervisor until became Defendant Alexandra Peake.

14. Plaintiff asserts that she endured vile language, racial slurs and epithets, threats, acts of physical aggression, and degradation by agents of defendants aforementioned. Plaintiff has

2

been called an idiot and threatened with termination numerously and publicly by her supervisor Defendant Peake and members of the Executive staff, such as Defendant Meyers.

15. Upon information and belief, the acts of the agents were meted to Plaintiff because of her race and being one of two African Americans in the Human Resources Department.

16. Because of her race and in furtherance of subjecting Plaintiff to mental anguish, Defendants dolled to Plaintiff, adverse employment actions and unfair practices such as manufacturing a negative annual performance review months after Plaintiff's review period, denying and/or forcing Plaintiff to forego earned leave, having Plaintiff work extended workdays, and isolating Plaintiff from her peers.

17. On or around August 13, 2024, Plaintiff slipped and fell in Defendant's parking lot, which she immediately reported to her supervisor Defendant Peake.

18. Plaintiff made a report with Lori Richards, Defendant's Staff Nurse. Ms. Richards, per Defendant, sent Plaintiff to Piedmont Medical in Aiken, SC. Plaintiff was granted accommodations to work from home and returned physically to Defendant on August 21, 2024, per the physician's note.

19. Plaintiff contends that her conditions worsened while working on-site. Despite Plaintiff's clear distress and the defendant's nurses offering Plaintiff pain relief and ice to placate Plaintiff's pain, her supervisor, Defendant Peake demanded that Plaintiff worked on-site while she was on vacation, denying Plaintiff a reasonable accommodation.

20. On or around August 30, 2024, Plaintiff was written out of work until an orthopedic followup on September 4, 2024. Subsequently, Plaintiff was returned to work with the authorization to work remotely.

21. Upon information and belief, because of extreme pain while working remotely, Plaintiff contacted Ms. Richards on or around September 6, 2024, explained that her condition was worsening, and asked if she had clearance to be seen by a hospital.

22. Upon information and belief, Plaintiff was written out of work and due to the injury sustained at work, in which Ms. Richards and Adjuster Steve Anthony informed Plaintiff that she would be granted Workers' Compensation.

23. On or around September 10, 2024, Mr. Anthony informed plaintiff that he received documentation from Defendant and provided the plaintiff an estimated Workers' Compensation Benefit payment date of September 16, 2024.

24. On September 19, 2024, Ms. Richards informed Plaintiff that she was forced by Defendant's agents to revoke the Workers' Compensation claim, submit a pre-drafted letter to Plaintiff, and tell Plaintiff to either file for Family Medical Leave Act (FMLA) benefits, forego salary, or return to work on-site. During a subsequent phone call with Ms. Richards to get clarification on the email, Defendant Peake joined the call, called Plaintiff stupid, forbade plaintiff to discuss her medical status with Ms. Richards, and intentionally caused Plaintiff emotional distress.

25. On or around September 23, 2024, Plaintiff was notified that Defendant revoked her Workers' Compensation status by the adjuster, Mr. Anthony, who stated that Defendant was "very angry" with Plaintiff being out of work.

26. On or around September 24, 2024, Defendant Peake removed Plaintiff from her essential job duties and reassigned the tasks to Plaintiff's two white trainees.

27. By September 26, 2024, Defendant Peake called and forced Plaintiff to either use vacation time to pay for time that was originally coded for Workers' Compensation or Defendant would not pay her.

28. On or around October 30, 2024, Ms. Richards sent an email to staff approving Plaintiff to work from home due to new medications, complications, and prescriptions for physical therapy after Plaintiff's October 29, 2024, orthopedic appointment.

29. The same day, Ms. Richards sent two additional emails regarding Plaintiff's status—one for the plant to disregard the email about Plaintiff's status change and the other with the subject line, "Taylor Clark continues to be on WC until further notice."

30. On or around October 31, 2024, shortly after receiving a call from Ms. Richards regarding paperwork for submission to Mr. Anthony, Plaintiff received a call from Defendant Peake in which Defendant Peake accused Plaintiff of faking her injury, being a liar, and not needing her medication. Immediately after the call, Plaintiff's Virtual Private Network (VPN) was cut off, indicating that Defendant had their technology department block Plaintiff's access and ability to work from home.

4

31. Upon information and belief, Defendant instructed their technology department to remove Plaintiff's access to force Plaintiff to return into the office. Further, Plaintiff contends that Defendant's agent Defendant Peake and Ms. Sheehan prohibited other employees to speak with Plaintiff, bragged about cutting Plaintiff's access, and instructed staff to only contact Plaintiff if they needed assistance from her.

32. On November 3, 2024, Plaintiff sent Defendant's Chief Executive Officer, Al Ridilla, an email complaint regarding the discrimination she endured at work; Mr. Ridilla did not respond. 33. On November 4, 2024, Defendant Peake responded to Plaintiff's email that was sent to Mr. Ridilla despite not being an intended or named recipient. Defendant Peake stated in her email to Plaintiff that Plaintiff would receive her annual performance review.

34. On or around November 6, 2024, Defendant Peake instructed Plaintiff to keep her door shut and not talk to anyone. Upon information and belief, Plaintiff's peers' doors were all open and Plaintiff was the only staff subjected to isolation.

35. On or around November 7, 2024, Defendant Peake, and Defendant Meyers who was on Defendant Peake's phone via speaker, issued Plaintiff an annual performance review, two months after Plaintiff's actual one-year mark with Defendant.

36. Upon information and belief, after issuance, Defendant Peake realized that the preemptive performance review was Plaintiff's first review and reflected Plaintiff's raise, Defendant Peake and Defendant Meyers took the performance review document from Plaintiff, left the room, regrouped, and returned with another review approximately ten minutes later.

37. The second review failed Plaintiff and was an adverse employment action because of Plaintiff's race, protected complaints, and Workers' Compensation claim.

38. Plaintiff states that she adhered to Defendant's policies, instructions, and Workers' Compensation practices to the best of her ability, while Defendant engaged in harmful, retaliatory tactics against Plaintiff because of her race, to create a hostile work environment, for making protected complaints, and for filing a Workers' Compensation claim following a workplace injury. 39. As a result of Defendant's and Defendant's agent's acts, Plaintiff has endured actual, financial, emotional, and mental harm.

### FOR A FIRST CAUSE OF ACTION (DEFENDANT AGY HOLDINGS) RACE DISCRIMINATION (42 USC Section 1981)

40. Each and every allegation set forth above is hereby repeated as fully incorporated herein.

41. Plaintiff is a member of a protected group on the basis of her race. Plaintiff was discriminated against based on her race in violation of 42 U. S.C. § 1981.

42. Plaintiff is informed and believes that because of her race, African American, she received a downgraded performance review, was treated disparately from her similarly situated comparators and counterparts, and had benefits and rights taken from her.

43. Plaintiff asserts that the on-the-job treatment and retaliation were pretextual. Plaintiff alleges Defendant intentionally initiated the discriminatory practices against Plaintiff based on her race.    44. Defendant was reckless, wanton and intentional in the discrimination of the Plaintiff in the following particulars, to wit:

   a. Knowingly subjecting Plaintiff to a downgraded performance review.
   b. In subjecting Plaintiff to disparate disciplinary procedures as compared to her similarly situated Caucasian counterparts under like circumstances to include denying and altering Plaintiff's leave, isolating her from her peers, and cutting her access through the VPN.
   c. In removing Plaintiff's job duties.
   d. In revoking Plaintiff's Workers' Compensation claim.
   e. In failing to protect Plaintiff from racial discrimination, preferential treatment or retaliation, Defendants acted with malice or reckless indifference to the federally protected rights set out under 42 U.S.C. Sec 1981.

45. The Defendant violated 42 U.S.C. Sec. 1981 by allowing the racial discrimination, preferential treatment and retaliation to exist in the workplace.

46. Defendant's racial discrimination of Plaintiff has caused, continues to cause, and will cause Plaintiff to suffer substantial embarrassment, humiliation, pain and suffering, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

47. Due to the acts of Defendant, its agents, and its employees, Plaintiff is entitled to injunctive relief, punitive and/or civil damages.

### FOR A SECOND CAUSE OF ACTION (DEFENDANT AGY HOLDINGS) RETALIATION (42 USC Section 1981)

48. Each and every allegation set forth above is hereby repeated as fully incorporated herein.

49. Plaintiff is a member of a protected group on the basis of her race. Plaintiff was retaliated against for making complaints of race discrimination in violation of 42 U. S.C. § 1981.

50. Plaintiff is informed and believes that because of her protected complaints of race discrimination, she was given a poor performance review, a removal of her job duties, and termination.

51. Plaintiff asserts that the on-the-job treatment and retaliation were pretextual. Plaintiff alleges Defendant intentionally initiated the retaliatory practices against Plaintiff based on her protected complaints.

52. Defendant was reckless, wanton and intentional in the retaliation against Plaintiff in the following particulars, to wit:

    f. Knowingly subjecting Plaintiff to a downgraded performance review.

    g. In subjecting Plaintiff to disparate disciplinary procedures as compared to her similarly situated Caucasian counterparts under like circumstances to include denying and altering Plaintiff's leave, isolating her from her peers, and cutting her access through the VPN.

    h. In removing Plaintiff's job duties.

    i. In revoking Plaintiff's Workers' Compensation claim.

    j. In failing to protect Plaintiff from retaliation, Defendants acted with malice or reckless indifference to the federally protected rights set out under 42 U.S.C. Sec 1981.

53. The Defendant violated 42 U.S.C. Sec. 1981 by allowing the retaliation to exist in the workplace.

54. Defendant's retaliation of Plaintiff has caused, continues to cause, and will cause Plaintiff to suffer substantial embarrassment, humiliation, pain and suffering, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

55. Due to the acts of Defendant, its agents, and its employees, Plaintiff is entitled to injunctive relief, punitive and/or civil damages.

### FOR A THIRD CAUSE OF ACTION (DEFENDANT AGY HOLDINGS) BREACH OF CONTRACT

56. Each and every allegation set forth above is hereby repeated as if fully incorporated herein. 57. Defendant publishes and maintains an employee handbook, which definitely assures employees that they will be treated in a nondiscriminatory and fair manner.

7

58. Plaintiff relied on the promises contained in the employee handbook and other related policies governing fairness in the workplace, and which prohibit the discriminatory and unfair treatment that she experienced working for the Defendant.

59. Defendant further states, in its handbook, that it will comply with the requirements of the law in implementing equal employment decisions.

60. Plaintiff and Defendant entered into a binding and valid contract whereby Plaintiff relied on Defendant's policies and procedures pursuant to its employee handbook and the above policies, and procedures. Plaintiff also relied on the Defendant's reassurance that it must follow its Internal Equal Employment Opportunity policy in its treatment of its employees regarding its EEO policies and regarding investigations of allegations of wrongdoing. Defendant expressly disregarded its policies by retaliating against Plaintiff due to her complaints of race discrimination.

61. Plaintiff agreed to fulfill the duties of her position in exchange for valuable consideration and salary with the promise of being protected from unlawful discrimination.

62. Plaintiff performed her job duties with due diligence, however Defendant, through its agents, unjustifiably failed to perform its duties by failing adhere to its promises of protection under the employee handbook to include the Defendant's EEO policies.

63. All of these actions violate the contractual anti-retaliation provisions within Defendant's employment handbook (contract), and other contractual policies and procedures of the Defendant.

64. Defendant's conduct, by and through their agents, were done in bad faith and breached the implied covenant of good faith and fair dealings that is implied in the employment contract.

65. As a result of Defendant's breach of contract, Plaintiff has suffered actual, compensatory, physical, mental, emotional and consequential damages stemming from the breach and other such damages as are allowable by law.

### FOR A FOURTH CAUSE OF ACTION (DEFENDANT AGY HOLDINGS) BREACH OF CONTRACT ACCOMPANIED BY A FRAUDULENT ACT

66. Each and every allegation set forth above is hereby repeated as if fully incorporated herein. 67. Defendant publishes and maintains an employee handbook, which definitely assures employees that they will be treated in a nondiscriminatory and fair manner.

68. Plaintiff relied on the promises contained in the employee handbook and other related policies governing fairness in the workplace and which prohibit the discriminatory and unfair treatment that she experienced working for the Defendant.

69. Defendant further states, in its handbook, that it will comply with the requirements of the law in implementing equal employment decisions.

70. Plaintiff and Defendant entered into a binding and valid contract whereby Plaintiff relied on Defendant's policies and procedures pursuant to its employee handbook and the above policies, and procedures. Plaintiff also relied on the Defendant's reassurance that it must follow its Internal Equal Employment Opportunity policy in its treatment of its employees regarding its EEO policies and regarding investigations of allegations of wrongdoing. Defendant expressly disregarded its policies by retaliating against Plaintiff due to her complaints of race discrimination.

71. Plaintiff agreed to fulfill the duties of her position in exchange for valuable consideration and salary with the promise of being protected from unlawful discrimination.

72. Plaintiff performed her job duties with due diligence, however Defendant, through its agents, unjustifiably failed to perform its duties by failing adhere to its promises of protection under the employee handbook to include the Defendant's EEO policies.

73. All of these actions violate the contractual anti-retaliation provisions within Defendant's employment handbook (contract), and other contractual policies and procedures of the Defendant.

74. Defendant's conduct, by and through their agents, were done in bad faith and breached the implied covenant of good faith and fair dealings that is implied in the employment contract.

75. Defendant, by and through its agents, has failed to fulfill its obligation under its own written policies and has breached the terms thereof by reason of an intentional design on its part to defraud Plaintiff.

76. In furtherance of such intentional design, Defendant, through its agents, intentionally and maliciously placed Plaintiff in a position of being subjected to racial mistreatment. It was readily apparent that Defendant's false reassurances were fraudulent as Defendant's continual violations of its own policy demonstrated.

77. Defendant's conduct, by and through its agents, was done in bad faith and breached the implied covenant of good faith and fair dealings that is implied in the employment contract and handbook.

78. As a direct and proximate result of Defendant's breaches of the Agency policies, the Agency Handbook and contract and procedures Plaintiff has been maligned and has suffered damages to include loss of sleep, mental anguish, emotional pain and suffering, and other compensatory, actual, and special damages due to the Defendant's failure to adhere to the terms of

the policies established by the Defendant resulting in a breach of Plaintiff's employment contract accompanied by the above fraudulent acts as it relates to the Defendant.

**FOR A FIFTH CAUSE OF ACTION (AS TO DEFENDANT AGY HOLDINGS)**
**(WORKERS' COMPENSATION RETALIATION UNDER S.C. CODE ANN. § 41-1-80)**

79. Plaintiff re-alleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

80. On or about August 13, 2024, Plaintiff suffered a work-related injury and subsequently filed a claim for workers' compensation benefits.

81. Following Plaintiff's filing for workers' compensation benefits, Defendant engaged in retaliatory conduct against Plaintiff, including revoking plaintiff's claim, removing Plaintiff from job duties, threatening Plaintiff to take FMLA or forego pay, isolating Plaintiff from peers, forcing Plaintiff to use personal leave, and providing a pretextual annual review in which Defendants failed Plaintiff.

82. Defendant's retaliatory actions were directly related to Plaintiff's exercise of their rights under the South Carolina Workers' Compensation Act.

83. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered damages, including lost wages, emotional distress, and lost benefits.

84. Defendant's actions, as described above, constitute unlawful retaliation in violation of S.C. Code Ann. § 41-1-80.

85. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has suffered damages in an amount to be determined at trial.

**FOR A SIXTH CAUSE OF ACTION (AS TO ALL DEFENDANTS)**
**(INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)**

86. Plaintiff re-alleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

87. That Defendant Peake has engaged in a pattern of harassing conduct by continually making threatening statements in the Plaintiff's presence, calling Plaintiff an idiot privately and in the presence of staff, isolating Plaintiff from peers, and invoking adverse employment actions against Plaintiff.

88. That Defendant Meyers has engaged in a pattern of harassing conduct by name-calling and humiliating Plaintiff and invoking adverse employment actions against Plaintiff. 89. That Defendant AGY Holdings is liable under a theory of respondeat superior

10

90. As a direct result of Defendants' actions, the Plaintiff has suffered severe emotional distress, fear, and anxiety.

91. Defendant's actions, as described above, constitute intentional infliction of emotional distress.

92. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has suffered damages in an amount to be determined at trial, including but not limited to, emotional distress, [and if applicable, medical expenses, loss of earnings, etc.].

### FOR A SEVENTH CAUSE OF ACTION (AS TO DEFENDANT PEAKE AND DEFENDANT MEYERS) (CIVIL CONSPIRACY)

93. Plaintiff re-alleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

94. The agreement between Defendant(s) and the overt acts taken in furtherance of the conspiracy constitute a civil conspiracy.

95. As part of this conspiracy, Defendant(s) committed the following overt act(s) in furtherance of the conspiracy:
    a. Revoking Plaintiff's Workers' Compensation claim
    b. Administering a downgraded performance review of Plaintiff.
    c. Isolating Plaintiff from others.

96. Those Individual Defendants acted outside the scope of their employment and in abuse of their positions to harass the Plaintiff and in abuse of their position to harass Plaintiff, retaliate against Plaintiff and to cover up their tracks.

97. That such treatment of Plaintiff was motivated by an intent to harm Plaintiff for their own personal agendas.

98. Said civil conspiracy has directly and proximately caused Plaintiff to be ostracized, isolated and to suffer increased stress and anxiety. Plaintiff has been forced to incur the costs and reasonable attorney's fees of prosecuting this action. Plaintiff is entitled to an award of punitive damages for the malicious, intentional, and mean-spirited actions of the Individual Defendants acting herein.

### JURY TRIAL REQUESTED

99. Plaintiff requests a jury trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Honorable Court declares that Defendants' actions complained of herein violated the rights guaranteed to Plaintiff and issue its judgment:

(1) Declaring the actions complained of herein illegal;

(2) Issuing an injunction enjoining the Defendants, their agents, employees, successors, attorneys and those acting in concert or participation with the Defendants, and at their direction from engaging in the unlawful practices set forth herein and any other employment practices shown to be in violation of 42 USC Section 1981, and the common laws of the State of South Carolina to include Plaintiff's claim for breach of contract and breach of contract accompanied by a fraudulent act.

(3) Awarding Plaintiff compensatory and punitive damages for each Cause of

Action contained herein, which the jury should find appropriate as a result of the Defendant's unlawful discriminatory actions taken as the result of Plaintiff's race and other pled causes of action; including mental anguish, pain and suffering, harm to Plaintiff's economic opportunities, any back pay, front pay and future earnings with cost-of-living adjustments, prejudgment interest, punitive damages, fringe benefits, and retirement benefits;

(4) Awarding Plaintiff her costs and expenses in this action, including reasonable attorney fees, and other litigation expenses; and

(5) Granting such other and further relief as may be just and necessary to afford complete relief to the Plaintiff as this Court may deem just and proper.

                                  RESPECTFULLY BY:
                                  <u>s/Aaron V. Wallace</u>
                                  Aaron V. Wallace (11469)
                                  Wallace Law Firm
                                  1416 Laurel Street, STE B
                                  Columbia, SC 29210
December 2, 2024                Fax:839-218-5786